HERSEY, Judge.
Herbert and Judith Edelberg entered into a contract with Monogram Building & Design for the construction of a residence. For the convenience of Monogram, closing of the transaction took place before completion of construction. To ensure proper compliance with the construction contract, a portion of the purchase price was placed in escrow with Gary Dunay and the firm of Broad and Cas-sel. It is alleged that at some point, due to financial reverses, the Edelbergs attempted to withdraw from the transaction. Monogram considered this a default and so notified the Edelbergs, indicating its intention to withdraw the escrowed funds. The Edel-bergs sought a temporary injunction to prevent release of the funds. The trial court denied the request for injunction as an inappropriate remedy in an action involving only the right to money or money damages. The escrow deposit was released to Monogram. Subsequently the escrow agents, who are the appellees in this case, moved for summary judgment which was granted. The Edel-bergs appealed.
The conditions under which a buyer’s deposit may be released to a seller where there has been less than full performance by both parties is controlled by statute. Section 501.-1375(7), Florida Statutes (1989), provides in relevant part:
RELEASE OF DEPOSIT MONEYS. Funds in an interest bearing escrow account shall be released without the signature of both the building contractor or developer and the buyer only under the following conditions: (c) If the buyer properly terminates the contract pursuant to its terms, the funds, including accrued interest, shall be paid to the buyer.
(d) If the buyer defaults in the performance of his obligations under the contract of purchase and sale, the funds shall be paid to the building contractor or developer together with any interest earned, in the following manner: The builder or developer may, upon default of the buyer to comply with the terms and conditions of the written contract between the parties, and if the builder or developer is not in default, withdraw any funds being held in escrow pursuant to said written agreement. In order to make such withdrawal, the builder or developer shall send written notice by certified mail to the buyer of his intention to make said withdrawals at least 72 hours prior to the intended time of withdrawal. After this 72-hour period, the builder or developer, upon presentation to the escrow holder of a withdrawal slip and the passbook, if any, together with an affidavit certifying that the buyer is in default and that the builder or developer is not in default, may withdraw the escrowed funds. The escrow holder, upon receipt of these items, shall release the funds to the builder or developer. The escrow holder shall not be liable for the release of the funds pursuant to this subsection.
The trial court interpreted this statute as permitting release of the escrowed funds at the expiration of the seventy-two hour period where the notice requirement had been met and the seller had furnished the escrow agent with an affidavit certifying that the buyer was in default. The trial court’s order granting summary judgment contains the following statement:' “The court finds that the statute does not require that the buyer actually be in default or that there be a judicial determination of the buyer’s default prior to the release of the escrowed funds by the escrow agent.” This statement represents an incorrect interpretation of the statute. The mechanism for release of escrow funds under circumstances such as those existing in the present case is established by subsection (d) which, in turn, is premised on the conditional phrase: “If the *1229 buyer defaults....” The statute does not say nor do we take it to mean: “If the seller certifies that the buyer is in default_” In other words, the triggering event is an actual default, not merely an affidavit that there has been a default. Thus, the trial court was in error.
It is apparently conceded that at no time have the Edelbergs been given a meaningful hearing on the issue of whether or not they were in default under the contract. The statute requires that the seller give the buyer seventy-two hours notice of intention to withdraw escrowed funds. The sufficiency of notice in the present case is uncontested. The question, then, is whether the statute by necessary implication requires that the buyer, upon making appropriate application, must be afforded an opportunity to be heard. We have no hesitancy in giving an affirmative response to that question.
It is now axiomatic that before the owner of property may be deprived of its possession there must be a meaningful opportunity to be heard at a meaningful time. Fuentes v. Shevin, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972). As we said in Antuna v. Dawson, 459 So.2d 1114, 1117 (Fla. 4th DCA 1984), “[t]he opportunity to be heard must be full and fair not merely colorable or illusive.”
In the case at bar a meaningful hearing would have been one in which the buyers were given an opportunity to present any defenses that they may have had to the seller’s claim that they were in default under the terms of the contract. Because the buyers and the seller do not agree on whether the actual contract (as opposed to the written contract) provided that buyers’ obligation to purchase and pay was contingent upon the buyers being able to obtain satisfactory financing, that issue must necessarily be tried and resolved before the ultimate question of whether the buyers were in default can be decided. A hearing which provides buyers with the opportunity to present their evidence and argument on these issues and any other defenses they may have would satisfy the requirement of a meaningful hearing.
The second requirement of Fuentes and its progeny is that the hearing be afforded “at a meaningful time.” Our cursory review of the legislative history leads us to conclude that the statute governing escrow deposits was an attempt to protect consumers from financial disaster resulting from the bankruptcy or other failure of developers and building contractors. That being so “a meaningful time” must surely require that the hearing, which we have said is mandated by the language and spirit of the statute, precede release of the funds to the seller. Any other interpretation would frustrate the purpose of the statute. We therefore so hold.
As an additional basis for summary judgment, the trial court interpreted section 501.1375(7)(d) as immunizing the escrow agent from liability. On remand, there must be a determination as to whether the buyers actually were in default. If they were, then the trial court will not need to reach the issue of the escrow agent’s immunity. Accordingly, we need not consider the import of the final sentence of section 501.1375(7)(d) except to note that the statute does not absolutely immunize an escrow agent from liability under all circumstances simply because an affidavit is received. We see no need to elaborate further or to treat the issue of the escrow agent’s immunity in more detail until after a determination has been made on the issue of default.
REVERSED AND REMANDED.
PARIENTE, J., and WALDEN, JAMES H., Senior Judge, concur.